UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                            :

RAIZA RODRIGUEZ,                   :       20-cv-9179

                                            :

                        Plaintiff,        :

      -against-                      :       **COMPLAINT**

                                            :

ZDG, LLC AND ROGER CHARTOUNI,    :

                                            :       JURY TRIAL DEMANDED

                      Defendants.    :

                                            :
---------------------------------------------------------------x

Plaintiff, Raiza Rodriguez ("Rodriguez"), by her attorneys, the Law Office of Marc Susswein PC, for her Complaint against Defendants ZDG, LLC ("ZDG") and Roger Chartouni ("Chartouni"), alleges as follows:

**PRELIMINARY STATEMENT**

1.      Rodriguez, a female Hispanic-American, regularly worked seven days a week on behalf of ZDG, a construction management firm based in New York City. Despite her admirable commitment to her employer and its clients, she was forced to work in an environment replete with severe, blatant and repeated acts of discriminatory harassment on the basis of her gender, race and national origin.

2.      A male colleague who functioned as Plaintiff's project Superintendent verbally abused Rodriguez on a daily basis, denigrating her as a female immigrant from the Dominican Republic working on a construction site. He regularly made statements about how he hated all immigrants and that Rodriguez should return to her country, that he would not listen to Rodriguez because he was "the man with the f*cking experience", and he verbally abused her before her

1

colleagues making statements like "talking to you is like talking to a dirty construction boot." When Rodriguez complained about this blatant discriminatory conduct to the senior executives at ZDG including one of its principals, Roger Chartouni, she was ignored.

3.     ZDG compounded this abusive conduct through its handling of Rodriguez's application for protected medical leave in connection with a fracture to her shoulder joint.  After Rodriguez notified ZDG that treatment of her shoulder injury required surgery, her leave was delayed many months. After finally obtaining approval to proceed with her leave in December 2019, ZDG notified Rodriguez upon her return that ZDG was terminating her employment on the grounds that she "abandoned her job."  When she disputed this, she was simply told ZDG did not need her anymore.

4.     This conduct gives rise to claims for damages and remedies arising from employment discrimination on the basis of national origin, race and gender in connection with Defendant ZDG's violations of the New York State Human Rights Law, New York Executive Law §§ 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, Administrative Code of the City of New York §§ 8-101 *et seq.* (the "NYCHRL") and for its violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (the "Civil Rights Act") on the basis of race, ethnicity and ancestry.

5.     Defendants ZDG and Chartouni also engaged in conduct giving rise to claims of unlawful interference with and retaliation for Rodriguez exercising her rights to protected leave in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA") and the NYSHRL and NYCHRL.

## ADMINISTRATIVE PREREQUISITES

6.      Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 3, 2020, and intends to file an Amended Complaint alleging violations of the Americans With Disabilities Act, 42 U.S.C. § 12111 et seq. (the "ADA") and Title VII of the Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq. ("Title VII") following the EEOC's completion of its investigation and expiration of the EEOC investigatory period.

7.      Following commencement of this action, a copy of this Complaint will be served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

8.      Any and all other prerequisites to the filing of this suit have been met.


## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation and violation of Plaintiff's rights under the FMLA and the Civil Rights Act.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims, including the unlawful violations of plaintiff's leave rights and complaints of harassment alleged herein, occurred within the district and because Defendant is a resident of the district.

## **THE PARTIES**

11.     Plaintiff Raiza Rodriguez is a former Senior Project Manager for construction management projects at ZDG.  At all relevant times, plaintiff was an employee of ZDG.  Plaintiff resides in Glen Ridge, New Jersey and was employed by ZDG for approximately three years.

12.     Defendant ZDG is a domestic limited liability company with offices and its principal place of business at 192 Lexington Avenue, 3rd Floor, New York, New York 10016. ZDG serves the New York City Metropolitan area with construction management services with employees and business operations in New York, New York.

13.     At all relevant times, Defendant Roger Chartouni is the senior managing executive of ZDG and is one of the two principal owners of ZDG.  Chartouni resides in Essex Fells, New Jersey.

## **FACTS**

**Rodriguez's Employment at ZDG**

14.     From April 17, 2017 to January 30, 2020, Rodriguez was employed by ZDG in New York, New York as a Senior Project Manager.

15.     ZDG provides construction management services throughout the New York City Metropolitan region including estimates, detailed budgeting, critical path method scheduling, logistics reviews, value engineering, coordination with local building departments and other municipal agencies and  development of logistics plans and subcontract administration.

16.     Rodriguez is a Hispanic American woman originally from the Dominican Republic who is highly trained in construction management.

17.     Rodriguez has worked as a construction management professional for the past seventeen years after receiving extensive academic training.

18.     Rodriguez received her Bachelors of Science degree in Civil Engineering from the Instituto Tecnologico De Santo Domingo in the Dominican Republic in 2003, her Masters of Science degree in Construction Management from New York University in 2005, and executive training at the Graduate School of Design at Harvard University in 2007.

19.     Rodriguez worked eight years as a Project Manager for Bovis Lend Lease, LMB where she, among other things, supervised projects in New York at the Bronx Criminal Courthouse, Barclays Capital and the New York Presbyterian Hospital. She subsequently worked for five years at the Martin Group, LLC as a Director of Procurement and Cost Controls until 2017.

20.     Rodriguez began employment with ZDG on April 17, 2017 as a Senior Project Manager at a starting compensation of $202,000 (*i.e.* $195,000 in salary plus $7,200 in car allowance).

21.     At that time, Rodriguez was also promised by Chartouni, one of the principals and the senior managing executive of ZDG, that within a few short months of her hiring she would receive a promotion to Project Executive along with a project bonus at year-end.

22.     In this role, Rodriguez was a dedicated and loyal employee who consistently performed at a high level and was recognized for her outstanding performance through ZDG's annual performance review process.

23.     Rodriguez was widely respected and well liked among her colleagues at ZDG.

**Rodriguez Was Repeatedly Subjected**
**To Blatant Discriminatory Treatment**

24.     Initially, Rodriguez was stationed at ZDG's main office in midtown Manhattan where she was responsible for the day-to-day management of all aspects of the 107 Columbia Heights Project (the "CH Project"), from pre-construction to completion including managing the bid and procurement process, the drawings review, execution of the CH Project, quality control, managing the budget and cost controls throughout the life cycle and managing the subcontractors and vendor relationships.

25.     After several months, however, Rodriguez was asked to transfer full-time to the project site in Brooklyn due to significant senior project staffing departures which ZDG failed to obtain replacements despite Plaintiff's repeated requests.

26.     Left in this difficult work circumstance, Plaintiff was forced to step up and perform the project functions and responsibilities of four employees (*i.e.* the Project Executive, the Senior Project Manager, the Lead Superintendent and the Accountant) or watch the project fail. Based on her refusal to let the project fail, and her tremendous work-ethic and dedication, Plaintiff successfully continued to move the project forward to completion at great personal cost. This resulted in Plaintiff needing to work seven days a week at a pace of one hundred hours a week over the balance of the life of the CH Project.

27.     Not only were Rodriguez's requests for additional project assistance ignored, but she was also compelled to work in an environment of constant abuse and harassment on the basis of her gender, race and national origin. The worst offender of this conduct -- but by no means the sole offender -- was the project Superintendent, Stephen Brady ("Brady") with whom she was required to interact on a daily basis at the job site of the CH Project.

28.     Brady, who shared an office with Plaintiff at the project site, made plain his views about immigrants to the United States by making offensive and discriminatory comments about her virtually every time she would see him which was multiple times a week.  He also shared his feelings about working with a female project manager.  Brady repeatedly made comments to Rodriguez and anyone else who would listen of the following type:

- He hated all immigrants and thought they should all go back to their countries;
- He printed a Trump inauguration photo, pinning it to the wall of their shared office. When anyone entered, Brady would point to the photo, make disparaging comments about immigrants and make references to Rodriguez;
- He made nasty comments about immigrants around the project site in general or about people specifically who he knew had emigrated to the United States;  A common refrain by Brady was "F*k immigrants" while pointing to Rodriguez.

29.     Brady also went out of his way to denigrate Rodriguez and her experience, often in front of other colleagues.  Some of the types of things he would regularly say to Rodriguez were:

- "Talking to you is like talking to a dirty construction boot;"
- "Talking to you is speaking with no one;"
- "You are too motherf*ing young to give direction to me;"
- "You are too f*ing  green to run a project;"
- "Don't listen to her, she is nobody here. I run the f*ing job;"
- "Shut up in my meeting, I give the f*ing directions here not you;"
- "You don't f*ing tell anyone here what to f*ing do;"

30.     Brady also attempted to marginalize and harass Rodriguez among her colleagues based on her gender and through the use of offensive sex-based language.  Examples of such verbal harassment toward Rodriguez that typically occurred multiple times a week on a regular basis included:

- "You don't f*ing tell me how my job is run; I am the man here with the f*ing experience;"
- At meetings, walk throughs or conversations with subcontractors on site, Brady would tell me to go "jerk-off" and "it might put you in a better f*ing mood";
- "I like to go home, have a beer and jerk-off";
- "I f*ing like how it feels to jerk-off";

- He would strip down and change his clothes in their joint office without regard to whether Rodriguez was present; and
- He would hang his wet underwear to dry in their joint office.

31. Rodriguez complained on a number of occasions to ZDG's owner and senior managing executive, Defendant Chartouni and to ZDG's Chief Financial Officer, Paul Sarcinella about Brady's conduct after transferring to the CH Project job site. Nothing was done to address this blatant harassment.

32. Rodriguez discussed Brady's conduct at ZDG's weekly meetings of the senior project management team. At these meetings, she disclosed on numerous occasions many of the offensive comments Brady had made to Rodriguez the prior week in front of the subcontractors with whom Plaintiff and Brady were working. In addition to being highly offensive, his harassment undermined Rodriguez and her authority over the subcontractors and other workers with whom she worked and supervised on the job.

33. In July 2018, Rodriguez again had a further detailed conversation about Brady's offensive conduct and verbal harassment with Paul Sarcinella and Defendant Chartouni.

34. On or about September 5th, 2018, Rodriguez spoke again directly with Defendant Chartouni in detail about Brady's harassing behaviors and actions towards her. She also discussed how Brady interacted with subcontractors and workers at the project site. She was told at the time, that ZDG management would speak with Brady about his behavior, attitude and management style. Nonetheless, Brady's conduct did not change.

35. On or about September 26, 2018, Rodriguez spoke again with Paul Sarcinella about the lack of any real change in Brady's conduct. She showed Mr. Sarcinella a photo at that time in which Brady had hung his wet underwear to dry in their shared field office.

36.     A week or two later, Sarcinella called Rodriguez into his office about certain ongoing verbal harassment by Brady toward Rodriguez that Sarcinella had heard about from another person at the job-site.  He advised that it had come to his attention that Brady had told Rodriguez that talking to her was as if he was talking to a dirty construction boot. Rodriguez told Sarcinella this was true, and provided him details of this conversation; that Brady and she were having a discussion of the project status and two-weeks look ahead schedule and tasks they needed to complete at hand and that was Brady's response to her updates. Rodriguez also told Sarcinella in detail how Brady spoke negatively to her about immigrants, how he often refused to listen to her inputs on the project because in his view she was just a young girl with no experience. Rodriguez also told Sarcinella how he liked to talk about going home, having a beer and jerking off. Rodriguez also discussed how Brady spoke to workers on the job.

37.     Despite Rodriguez notifying ZDG and Defendant Chartouni repeatedly about Brady's offensive and discriminatory conduct, it was not until the project client complained about Brady's poor performance that his employment was terminated in November 2018.

38.     Subsequent to Brady's termination, Rodriguez continued to experience discriminatory treatment by other managers who expressed dislike for working with a younger female colleague who refused to communicate directly with Rodriguez and treated her in a dismissive fashion.

**ZDG's Termination of Rodriguez's Employment**

39.     In April 2019, Rodriguez severely injured her shoulder outside of work.  As a result, she was diagnosed with a detached labrum and impact fracture and advised that proper medical treatment required surgery.

40.     Upon receipt of the diagnosis, Rodriguez notified Defendant Chartouni and Sarcinella of her need for a medical leave of absence for surgery and rehabilitation of her shoulder injury.  Defendant Chartouni required her to delay the surgery on successive occasions due to his stated desire that she complete the CH Project first.

41.     On or about August 6, 2019, Rodriguez again addressed the timing of and her need for surgery with Defendant Chartouni because her surgeon advised Rodriguez that further delays in surgery could result in lasting damage to her shoulder.

42.     Defendant Chartouni again required that Rodriguez delay surgery this time until December, when they would be closer to completing the CH Project.  Chartouni told Rodriguez at that time, that after she came back from leave, she could finish up the CH Project and begin transitioning to the TCC Archcare project which would be starting up then.

43.     Rodriguez scheduled her shoulder surgery for December 17, 2019 and provided ZDG with supporting medical documentation from her physician providing notice of her condition, the need for surgery and six weeks of post-surgery rest, recuperation and rehabilitation.

44.     After her surgery and despite her documented need for post-surgery rest and rehabilitation, Rodriguez was called upon to continue working remotely every day from home, eight hours a day, monitoring and supervising the progress of the CH Project.

45.     Rodriguez returned to work at the CH Project site performing inspections and walk-throughs on January 13, 2020 (four weeks after undergoing surgery) and full time to the ZDG main office on January 21, 2020.

46.     One week later, on January 30, 2020, Defendant Chartouni terminated Rodriguez's employment on the stated grounds that she had "abandoned the job".  This is not only pretextual but reflects the arbitrary and retaliatory manner in which ZDG treated Rodriguez and her injury.

47.     When Rodriguez disputed that she abandoned the job, Chartouni claimed that he was terminating her employment because he didn't need her anymore.

48.     This additional justification for termination of her employment are also pretextual and violates Rodriguez's rights to be restored to the same or an equivalent position after taking a medical leave and her rights to take a medical leave as a reasonable accommodation.

49.     Defendant Chartouni's stated decision to terminate Rodriguez's employment is pretextual and at odds with his prior demands and representations that Rodriguez should delay her surgery to coincide with her transition from the CH Project to the TCC Archcare project which was to begin in or about December.

50.     At the time of termination of Plaintiff's employment, the TCC Archcare project was beginning to undergo construction.

51.     Furthermore, ZDG hired a number of non-disabled male employees to managerial roles that Rodriguez was qualified to perform in or around the time of termination of Rodriguez's employment or shortly thereafter thereby replacing Rodriguez in her function at ZDG.

52.     Because there are a limited number of construction companies in need of project managers with Rodriguez's skill set and since that time the coronavirus pandemic has significantly curtailed hiring, as of the filing of this Complaint, Rodriguez has not been able to find comparable gainful employment.  Rodriguez's overall compensation and benefits and her earning potential will therefore be significantly negatively impacted as a result of ZDG's unlawful and discriminatory termination of her employment.

53.     Furthermore, the discriminatory and retaliatory treatment that Rodriguez endured at ZDG has caused her, and she continues to suffer, significant amounts of anxiety, stress, anguish, exacerbation of physical injury and emotional distress which has impacted her personal health on an ongoing basis.

## FIRST CLAIM

### (Unlawful Interference in Violation of the FMLA
### Against Defendants ZDG and Chartouni)

54. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth herein.

55. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA, and Defendants were "covered employers" within the meaning of the FMLA.

56. By its actions detailed above, among others, Defendants have unlawfully interfered with Plaintiff's rights to take FMLA leave and to return to work from such leave in a same or similar position and by unlawfully terminating her employment.

57. As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages, liquidated damages, and other relief.

## SECOND CLAIM

### (Retaliation in Violation of the FMLA
### Against Defendants ZDG and Chartouni)

58. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth herein.

59. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA. Plaintiff, a full-time employee of Defendant ZDG, at all relevant times worked at least 1,250 hours in any 12-month period preceding her termination.

60. At all times relevant herein, Defendants were a "covered employer" within the meaning of the FMLA. Upon information and belief, ZDG employed 50 or more employees in at least 20 calendar weeks within a 75-mile radius of Defendant ZDG's headquarters.

61. By its actions detailed above, among others, Defendants have retaliated against Plaintiff for availing herself of the rights and benefits of the FMLA.

62. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages, liquidated damages, and other relief.

**THIRD CLAIM**

**(Discrimination on the Basis of Race, Ethnicity and Ancestry
In Violation of The Civil Rights Act Against Defendant ZDG)**

63. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth herein.

64. By its actions detailed above, Defendant ZDG unlawfully discriminated against Plaintiff on the basis of her race and ethnicity in violation of the Civil Rights Act by subjecting her to inferior terms and conditions of employment, including but not limited to subjecting her to disparate working conditions and denying her the opportunity to work in an employment setting free of unlawful harassment.

65. Defendant ZDG has discriminated against Plaintiff on the basis of her race and ethnicity in violation of the Civil Rights Act by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

66.     As a direct and proximate result of Defendant ZDG's unlawful and discriminatory conduct in violation of the Civil Rights Act, Plaintiff has suffered and continues to suffer substantial economic harm and monetary damages, including, but not limited to, loss of past and future income, as well as enhancements to compensation and benefits, for which she is entitled to an award of monetary damages and other relief.

67.     As a direct and proximate result of Defendant ZDG's unlawful and discriminatory conduct in violation of the Civil Rights Act, Plaintiff has suffered, and continues to suffer, severe mental anguish, emotional distress and exacerbation of physical injuries for which she is entitled to an award of monetary damages and other relief.

68.     Defendant ZDG's unlawful discriminatory conduct was intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the Civil Rights Act, for which Plaintiff is entitled to an award of punitive damages.

## FOURTH CLAIM

### (Discrimination on the Basis of National Origin, Race and Gender In Violation Of The NYSHRL Against Defendant ZDG)

69.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth herein.

70.     By its actions detailed above, Defendant ZDG unlawfully discriminated against Plaintiff on the basis of her national origin, race and gender in violation of the NYSHRL by subjecting her to inferior terms and conditions of employment, including but not limited to subjecting her to disparate working conditions and denying her the opportunity to work in an

employment setting free of unlawful harassment, and ultimately terminating Plaintiff's employment and replacing her function with male colleagues.

71.     Defendant ZDG has discriminated against Plaintiff on the basis of her national origin, race and gender in violation of the NYSHRL by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

72.     As a direct and proximate result of Defendant ZDG's unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer substantial economic harm and monetary damages, including, but not limited to, loss of past and future income, as well as enhancements to compensation and benefits, for which she is entitled to an award of monetary damages and other relief.

73.     As a direct and proximate result of Defendant ZDG's unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish, emotional distress and exacerbation of physical injuries for which she is entitled to an award of monetary damages and other relief.

74.     Defendant ZDG's unlawful discriminatory conduct was intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CLAIM

**(Discrimination on the Basis of National Origin, Race and Gender
In Violation Of The NYCHRL Against Defendant ZDG)**

75.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth herein.

76.     By its actions detailed above, Defendant ZDG unlawfully discriminated against Plaintiff on the basis of her national origin, race and gender in violation of the NYCHRL by subjecting her to inferior terms and conditions of employment, including but not limited to subjecting her to disparate working conditions and denying her the opportunity to work in an employment setting free of unlawful harassment, and ultimately terminating Plaintiff's employment and replacing her function with male colleagues.

77.     Defendant ZDG has discriminated against Plaintiff on the basis of her national origin, race and gender in violation of the NYCHRL by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

78.     As a direct and proximate result of Defendant ZDG's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer substantial economic harm and monetary damages, including, but not limited to, loss of past and future income, as well as enhancements to compensation and benefits, for which she is entitled to an award of monetary damages and other relief.

79.     As a direct and proximate result of Defendant ZDG's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish, emotional distress and exacerbation of physical injury for which she is entitled to an award of monetary damages and other relief.

80.     Defendant ZDG's unlawful discriminatory conduct was intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CLAIM

### (Discrimination on the Basis of Disability in Violation
### of the NYCHRL Against Defendants ZDG and Chartouni)

81.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth herein.

82.     Plaintiff suffered from a "disability" within the meaning of § 8-102(16) of the NYCHRL.

83.     At all times relevant herein, Defendants were an "employer" within the meaning of the NYCHRL.

84.     By its actions detailed above, among others, Defendants have unlawfully violated Plaintiff's rights by subjecting her to lesser working conditions as a result of her disability and denying her the opportunity to work in an employment setting free of unlawful discrimination due to her disability, by denying her reasonable leave accommodations, a cooperative dialogue in connection with such leave, to restoration to the same or a similar employment position upon return from leave, by treating her leave as an abandonment of her job or otherwise terminating her employment, by replacing Plaintiff with a non-disabled employee and/or an employee who had not exercised leave rights and by treating Plaintiff less well as a result of her disability.

85.     As a direct and proximate result of Defendants unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer substantial economic harm and monetary damages, including, but not limited to, loss of past and future income, as well as enhancements to compensation and benefits, for which she is entitled to an award of monetary damages and other relief.

86.     As a direct and proximate result of Defendants unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish, emotional distress and exacerbation of physical injury for which she is entitled to an award of monetary damages and other relief.

87.     Defendants unlawful discriminatory conduct was intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## SEVENTH CLAIM

### (Retaliation on the Basis of Disability in Violation of the NYCHRL Against Defendants ZDG and Chartouni)

88.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth herein.

89.     Plaintiff suffered from a "disability" within the meaning of § 8-102(16) of the NYCHRL.

90.     At all times relevant herein, Defendants were an "employer" within the meaning of the NYCHRL.

91.     By its actions detailed above, among others, Defendants unlawfully retaliated against Plaintiff on the basis of her disability and for availing herself of the disability rights and benefits afforded her under the NYCHRL.

92.     As a direct and proximate result of Defendant's retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer substantial economic harm and monetary damages, including, but not limited to, loss of past and future income, as well as

enhancements to compensation and benefits, for which she is entitled to an award of monetary damages and other relief.

93.     As a direct and proximate result of Defendants retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish, emotional distress and exacerbation of physical injury for which she is entitled to an award of monetary damages and other relief.

94.     Defendants discriminatory and retaliatory conduct was intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## EIGHTH CLAIM

**(Aiding and Abetting Violations of the NYCHRL on the Basis of Gender National Origin, Race and Disability Against Defendant Chartouni)**

95.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth herein.

96.     Defendant Chartouni knowingly or recklessly aided and abetted the unlawful employment practices and discrimination against Plaintiff on the basis of her gender, national origin, race and disability in violation of the NYCHRL.

97.     As a direct and proximate result of Defendant Chartouni's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer substantial economic harm and monetary damages, including, but not limited to, loss of past and future income, as well as enhancements to compensation and benefits, for which she is entitled to an award of monetary damages and other relief.

98.     As a direct and proximate result of Defendant Chartouni's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish, emotional distress and exacerbation of physical injury for which she is entitled to an award of monetary damages and other relief.

99.     Defendant Chartouni's unlawful discriminatory conduct was intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that the Court enter judgment in her favor against the Defendants, and containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York and the City of New York;

B.     An injunction and order permanently restraining Defendant and its partners, officers, owners, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C.     An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate for all monetary and/or economic damages, including but not limited to, loss of past and future income, wages, compensation, unpaid bonus compensation and other benefits of employment;

D.      An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's mental anguish and emotional distress, exacerbation of physical injury, as well as damage to her reputation.

E.      An award of punitive damages and any applicable penalties and/or liquidated damages, in an amount to be determined at trial;

F.      Prejudgment interest on all amounts due;

G.      An award of fees and costs that Plaintiff has incurred in this action, including but not limited to, expert witness fees, as well as reasonable attorneys' fees and costs to the fullest extent permitted by law; and

H.      Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: November 2, 2020
New York, New York

Respectfully submitted,

**THE LAW OFFICE OF MARC SUSSWEIN PC**

By: _/S/ Marc Susswein_____
        Marc A. Susswein, Esq.
909 Third Avenue, 26th Floor
New York, New York 10022
Tel:  (212) 286-2204
Fax: (877) 345-5374
marcsusswein@susswinlaw.com

*Counsel for Plaintiff*